**NORTH BEACH LEATHER INTERNATIONAL, INC.,**
Plaintiff,

v.

**MORGAN GUARANTY TRUST COMPANY OF NEW YORK,**
Defendant.

**No. 88 Civ. 0445 (MBM).**

United States District Court,
S.D. New York.

July 5, 1988.

---

Paul Robbins, Nitkin, Alkalay, Handler & Robbins, New York City, for plaintiff.

Ogden Lewis, and Nancy Snow Bockelle, Davis Polk & Wardwell, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff North Beach Leather International, Inc. moves for summary judgment pursuant to Rule 56, Fed.R.Civ.P., seeking payment on two letters of credit issued for its account by defendant Morgan Guaranty Trust Company of New York. Morgan cross-moves for summary judgment dismissing the complaint. For the reasons set forth below, both motions are denied.

### I.

North Beach sells leather goods. In October 1987, one of North Beach's customers, Brooks Fashion Stores, Inc., provided it with two letters of credit, nos. 885249 and 885250, issued by Morgan, naming North Beach as beneficiary, to secure payment for goods to be shipped to T. Edwards, a store affiliated with Brooks.[1]

Both letters of credit expired on December 1, 1987. Each covered payments for goods sold to T. Edwards under foreign order numbers listed in the letters of credit. One letter of credit was for $12,850.20 and covered "Leather Dresses, Pants, Jackets, and Skirt" [sic]. The other was for $13,472.80 and covered leather dresses. Each letter of credit required presentation of certain documents to obtain payment: two copies of the "commercial invoice indicating style, purchase order number and quantity shipped describing the merchandise" indicated in the letter of credit, two copies of the packing list, two copies of the warehouse receipt, an inspection certificate, and a letter of approval for both a pre-sample and production sample of the goods. Neither letter of credit, either expressly or by implication, prohibited North Beach from delivering all the required documents for both letters of credit in one shipment.

During the fall of 1987, it became apparent that Brooks was in financial trouble; on December 7, 1987 it filed for reorganization under Chapter 11.

Prior to December 1, 1987, North Beach shipped to T. Edwards the goods covered by the two letters of credit.

On November 30, 1987, the day before the letters of credit were to expire, North Beach presented to Morgan a draft for $25,559.60 accompanied by numerous documents. North Beach claims that it submitted "all documents required by both the First and Second L/C's," while Morgan claims that it received two copies each of 10 invoices, several packing lists, foreign order forms, and Federal Express airbills. This Court's inspection of the invoices reveals that of the ten invoices submitted by North Beach, seven listed the foreign order numbers pursuant to which the goods were shipped; the remaining three did not specify which foreign orders they pertained to. Every invoice that listed foreign order numbers contained at least one foreign order number from each of the two letters of

1. The customer listed on both letters of credit is Brooks Fashion Stores, Inc. According to Morgan, Brooks operates numerous women's specialty apparel stores throughout the United States. The goods covered by the letters of credit were to be shipped to T. Edwards, apparently one of the stores operated by Brooks.

credit; several foreign order numbers appeared on more than one invoice. In addition, all the invoices indicated that they were issued in connection with letters of credit nos. 885249 and 885250, the letters of credit at issue in this case. The ten invoices total $25,559.60, the total credit provided by the two letters of credit.

At some point after the letters of credit expired—either by telephone on December 4, according to Morgan, or by letter received December 14, according to North Beach—Morgan notified North Beach that it would not accept the documents because they reflected a combined shipment. At a later date—either by telephone on December 14, according to Morgan, or by letter received December 22, according to North Beach—Morgan notified North Beach of additional problems with the papers, including the absence of warehouse receipts, approval letters or inspection certificates.

## II.

Summary judgment should be granted only when no genuine issue of material fact exists. *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The fact that both sides have moved for summary judgment does not necessarily mean that there is no material issue of fact in dispute. *Eastman Machine Co. v. United States*, 841 F.2d 469 (2d Cir.1988).

North Beach claims that it is entitled to summary judgment because the combined presentation of documents under the two letters of credit was not a discrepancy and, therefore, Morgan's refusal to pay on the letters of credit was unjustified. In addition, North Beach claims that even assuming *arguendo* both that the combined presentation was a discrepancy and that notice was given four days after submission of the documents, the notice was untimely under the Uniform Customs and Practice for Documentary Credits (the "UCP"), which governs the letters of credit[2]. Article 16(d) of the UCP requires that:

if the issuing bank decides to refuse the documents, it must give notice to that effect without delay by telecommunication or, if that is not possible, by other expeditious means, to the bank from which it received the documents (the remitting bank) or to the beneficiary, if it received the documents directly from him.

North Beach claims also that the later notice of additional defects was impermissible not only because it was untimely but also because Morgan was not allowed to offer a completely different reason for refusal after its first reason had been refuted.

Morgan, on the other hand, claims that it is entitled to summary judgment dismissing the complaint because the letters of credit did not provide for combined shipment of documents and it was therefore justified in refusing to pay on the letters of credit. It argues further that the submitted documents could not be reconciled with the foreign order numbers covered by the letters of credit, and that its notice was timely. I am not fully persuaded by either side's arguments.

■ New York requires strict compliance with the terms and conditions of a letter of credit. *Marino Industries Corp. v. Chase Manhattan Bank*, 686 F.2d 112, 114 (2d Cir.1982); *see also* H. Harfield, Letters of Credit at 2, 41, 51–55 (1979). Strict compliance is necessary because the issuing bank's duty to pay on letters of credit is dependent solely on the presentation of conforming documents, not on the underlying transaction. *Marino Industries Corp., supra*, 686 F.2d at 115. The requirement of strict compliance ensures "orderly and efficient banking procedures and the international commerce amongst Nations." *Oriental Pacific (U.S.A.), Inc. v. Toronto Dominion Bank*, 78 Misc.2d 819, 820, 357 N.Y.S.2d 957, 959 (Sup.Ct.N.Y.Co.1974).

■ I do not accept Morgan's contention that because the letters of credit did not explicitly permit combined presentation of

**2.** Both letters of credit expressly provide that they are subject to the UCP.

documents, North Beach's combined submission was a deficiency *per se* entitling Morgan to refuse payment on the letters of credit. Morgan offers no legal authority in support of this claim, but relies solely on a publication entitled *Export–Import Financing: A Practical Guide,* which states that a beneficiary under two letters of credit from the same issuer is not permitted to combine the shipment but must present two separate sets of documents. I refuse to create or apply a rule based solely on this publication that combined shipments of documents are not permissible when collecting on letters of credit.

While Morgan places great emphasis on the requirement of strict compliance, it overlooks the "corollary to the rule of strict compliance [which] is that the requirements in letters of credit must be explicit and that all ambiguities are construed against the bank." *Marino Industries Corp., supra,* 686 F.2d at 115 (citations omitted). Here, there was no indication in either letter of credit that combined presentation of the documents was not permitted. Applying the rule that requirements in letters of credit must be explicit, I reject Morgan's attempt to infer such a requirement.

Although the combined presentation of documents is not a discrepancy *per se* entitling Morgan to refuse payment on the letters of credit, an issue of fact exists as to whether or not North Beach's presentation of documents was adequate. North Beach claims that although some of the invoices did not indicate which foreign orders they covered, it was possible, by cross-referencing to the foreign order forms which it included in its presentation, to match up the invoices with the foreign order forms and to ascertain that the invoices covered all the foreign order forms listed in the letters of credit. Morgan claims that this reconciliation of documents is difficult, if not impossible. It claims further that Article 30 of the UCP permits it to refuse invoices issued for amounts in excess of the amount permitted by the credit. While the individual invoices cover goods shipped pursuant to foreign order numbers listed in both letters of credit, the combined invoices

total $25,559.60, the exact total of the two letters of credit. Accordingly, Morgan's rejection of the documents cannot be justified on the ground that the invoices issued exceeded the amounts of the letters of credit.

On this record, issues of fact exist as to whether the documents submitted by North Beach could be reconciled with the letters of credit, and whether this reconciliation exercise, even if possible, is one that Morgan was required to undertake. Because I am deciding the motion and cross-motion on this ground, I need not determine whether Morgan gave North Beach timely notice of the alleged discrepancies.

For the reasons set forth above, both motions are denied.